RANDOLPH *v.* SEABOARD AIR-LINE RAILWAY.

Under the facts of this case the court erred in directing a verdict.

APRIL 16, 1910.

Action for damages.    Before Judge Parker.    Glynn superior court. May 24, 1909.

*Burton Smith* and *D. W. Krauss,* for plaintiff.

*Crovatt & Whitfield,* for defendant.

EVANS, P. J.    The action is by the widow of H. B. Randolph against the Seaboard Air-Line Railway, to recover damages for his alleged wrongful death occasioned by the defendant in the running of its locomotive and cars on the 3d day of February, 1902.    The court directed a verdict, upon the conclusion of the evidence, in favor of the defendant, and the plaintiff excepts.    The action is a renewal of the one in which a judgment of nonsuit was granted and reviewed by this court in 120 *Ga.* 970 (48 S. E. 396).    A demurrer was filed to the renewed action, and was overruled by the trial court; and the judgment overruling the demurrer was affirmed by this court in 126 *Ga.* 238 (55 S. E. 47).    In the latter report there appears a substantial copy of the allegations of the plaintiff's petition.    Those describing the place where the homicide occurred, separately paragraphed, were as follows: "petitioner's husband was crossing the track of defendants at said time and place on a private way;" "petitioner's husband was crossing the track of de-

fendants at a place where he had a right to be, and where the public had a right to be;" "defendants were charged with knowledge of the fact that someone might and probably would be upon said track at any time." No special demurrer was filed to these allegations. It may be that they are equivocal in the statement as to whether the defendant was killed upon a private way or a public way; but the legal process of testing uncertainty of averment in pleading is by special demurrer, and not by direction of a verdict. On the trial both sides introduced evidence respecting the character of the place where it was contended the plaintiff's husband was killed. The plaintiff's testimony was to the effect, that it was a public road crossing; that it was used as an ordinary highway, until the yellow fever epidemic in 1893, when either the authorities of the City of Brunswick or of the United States, in draining the territory in that vicinity, cut some ditches across the road, since when it had not been used for vehicles, but had been continuously used by pedestrians and especially by the people who lived in a number of houses located near by; that the road had never been formally discontinued as a highway by the public authorities. The defendant introduced testimony to disprove the plaintiff's contention with respect to the path being upon an existing public highway. The testimony along this line was sufficient to authorize an inference, that, although the road was not used as a highway for vehicles, it was still in general use by the public as a pathway; that it was originally recognized by the public authorities of the county as a public road and had not been formally discontinued. If the case had been submitted to the jury, they might have drawn the inference that the plaintiff's husband at the time of his death was crossing the railroad track at a place where he had a right to cross without becoming a trespasser.

No eye-witness to the killing was offered by either party. The plaintiff's testimony as to liability was directed towards the proof of facts authorizing an inference that the deceased was killed at a public crossing, and she relied upon the presumption of negligence raised against the railroad company by the Civil Code, § 2321, upon the proof of the killing by the running of the defendant's locomotive and cars. The defendant introduced in evidence the testimony delivered by W. S. Taylor, when a witness for the plaintiff on the first trial. His testimony was to the effect, that

the train which killed the plaintiff's husband was running on schedule time at the rate of twenty-five miles an hour; that there was a public crossing about twenty-seven hundred feet from the place of the killing; that he saw fresh shoe tracks which indicated that the deceased was walking in the direction in which the train was going; that he walked along the right of way of the Southern railroad about twenty feet, and then along a drain-ditch running parallel with the railroad track of the defendant company, for about twenty feet, when he turned diagonally and obliquely towards the crossties, where he attempted to cross the track when stricken by the engine. He also testified, that he was a passenger on that train, but was riding on the engine; that there were three other persons on the engine at the time plaintiff's husband was killed by it; a Mr. Cabaniss and the witness were sitting on the fireman's box, the witness in the rear of Cabaniss and facing sidewise towards the engineer, who was sitting on his box on the right-hand side of the engine; the fireman was somewhere down in the pit. The witness did not keep a lookout ahead of the train, and did not know the plaintiff's husband had been struck by the engine until the engineer exclaimed, "My God, I believe I have killed that man," or words to that effect. He further testified that the train ran some distance beyond the point where the deceased was killed, when it was stopped and backed to where the body was lying by the side of the track. He did not leave the engine, but several persons got off of the train, and the body was put upon the train and brought to Gloucester street; the train then went back to the scene of the killing, when the witness examined the place and found fresh foot-tracks which he was of the opinion were made by the deceased in approaching the place where he was killed. The witness gave the course of these footprints and the distance of the steps, and drew therefrom an inference that the plaintiff's husband attempted to cross the track about a hundred feet in advance of the rapidly approaching engine. In rebuttal of this testimony the plaintiff offered testimony that "the path which crossed the railroad at that locality was tolerably hard, and you could not recognize a track at all. All of the path out there is too hard to show footprints." The other witnesses offered by the railroad company testified to the rate of speed the train was running; described the locality where the injury occurred as being so free from obstructions that a person ap-

proaching the track at the place where the deceased was killed could see an approaching train a considerable distance; and denied that the path was over and upon an existing public highway.

When the case was before this court on exceptions to the grant of a nonsuit, the plaintiff relied upon the testimony of Taylor, whose testimony on that trial was offered by the defense in the last trial. In the course of the opinion affirming the nonsuit on the first trial it was said, "The track was straight and unobstructed. Had the deceased been upon the track he could have been seen by the engineer for more than half a mile. In like manner he could have seen and heard the engine for a long distance before it reached him. There was nothing to indicate that his sight or hearing was defective. All of the circumstances indicated that he was walking near the track in a place of safety, that he turned obliquely, walked, say twelve feet, across the track; and just failed to cross before he was hit by the rapidly moving engine. Considering the speed at which the locomotive was running, it is evident that it would have been impossible to stop the train between the time the engineer could have seen him in a place of danger and the time that he was struck. On this ground the court might properly have granted the nonsuit, without considering any variance between the allegata and probata, or the further question as to whether the deceased himself could not have avoided the danger by the exercise of ordinary care." The conclusions of the court were based upon the deductions drawn from the data given by the witness Taylor as to the manner and time in which the deceased was approaching the track. On the present trial the defendant introduced Taylor's evidence, and the plaintiff attacked his credibility by evidence tending to prove that the ground was so hard at the place where the killing occurred that the jury need not necessarily accept the inference that the approach of the deceased to the place where he was killed was as described by Taylor. Notwithstanding there were four persons upon the engine, no eye-witness was produced to the killing, and the manner and circumstances of the homicide were left largely to inferences to be drawn from the appearance of certain shoe tracks, when there was some dispute as to whether, on account of the hardness of the ground, the shoes of a pedestrian would make imprints or leave any signs. The jury, and not the court, is the tribunal to settle the ultimate facts

of diligence and negligence sought to be established by deductions from data concerning the truth of which the respective parties to the litigation are at issue.

*Judgment reversed. All the Justices concur, except Atkinson, J., disqualified.*